IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:13-cv-131

TROPICAL NUT & FRUIT CO.,

       Plaintiff,

  v.

FORWARD FOODS, LLC and
RECHARGE FOODS, LLC,

       Defendants.

ORDER

**THIS MATTER** is before the Court upon Plaintiff Tropical Nut & Fruit Co.'s Motion for Preliminary Judgment (Doc. No. 8). Having considered Plaintiff's Motion and Memorandum in Support, Defendants' Memorandum in Opposition (Doc. No. 19), Plaintiff's Reply (Doc. No. 20), testimony at an evidentiary hearing held on May 29, 2013, exhibits proffered at the evidentiary hearing (Doc. Nos. 26, 27, 28, 29, 30, and 31), and arguments of counsel, the Court holds that Plaintiff's Motion should be GRANTED, but only to the limited extent set forth below.

    **I.**      **BACKGROUND**

Plaintiff asserts that Defendants are committing trademark infringement by their use of the mark "RECHARGE DYNAMIC NUTRITION" ("Defendants' Mark"). (Doc. No. 1, Pl.'s Compl. 36). Defendants deny any infringement. Plaintiff is in the business of selling bulk and packaged snacks and specialty foods. (Doc. No. 1, Pl.'s Compl. 13). In 2010, Plaintiff alleges that, in 2010, it began formulating its "RECHARGE" line of snack food, targeting consumers with health and nutrition concerns. <u>Id.</u> In connection with this effort, Plaintiff applied for and

received a federal registration for the mark "RECHARGE" ("Plaintiff's Mark"). (Doc. No. 1, Pl.'s Compl. 15, 16; Exh. B to Compl.). In registering Plaintiff's Mark, the United States Patent and Trademark Office ("USPTO") did not require Plaintiff to prove secondary meaning. (Doc. No. 1, Pl.'s Compl. 16). Plaintiff has alleged that since at least September 7, 2011, Plaintiff has used Plaintiff's Mark consistently in interstate commerce and has made a substantial investment in the promotion of Plaintiff's Mark. (Doc. No. 1, Pl.'s Compl. 17; Doc. No. 20, Exh. 9). Plaintiff has also alleged that Defendants, in November, 2012, began selling over the bars over the internet using the mark "RECHARGE DYNAMIC NUTRITION." (Doc. No. 1, Pl.'s Compl. 28). Defendants continue to sell the bars and also give them away. (Testimony of Pat Muldoon). The packaging Defendants use on the bars and on the boxes containing them displays the word "Recharge" in bold characters. Underneath the word "Recharge" and in characters roughly half the size of "Recharge" are the words "Dynamic Nutrition." Defendants have sold approximately $10,000.00 worth of products since the inception of sales. (Testimony of Pat Muldoon). Defendants currently have $15,000.00 worth of product in inventory. Id.

## II.  DISCUSSION

The standard for issuance of preliminary injunctive relief is set forth in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed. 2d 249 (2008). To merit a preliminary injunction, the Plaintiff must establish that:

(1) It is likely to succeed on the merits of its claims;
(2) It is likely to suffer irreparable harm without the preliminary relief;
(3) The balance of equities tips in its favor; and
(4) An injunction is in the public interest.

Winter, 129 S.Ct. at 374. The Court will evaluate each of these factors separately.

**A. Likelihood of Success on the Merits.**

In order to succeed on the merits, Plaintiff must show that (1) it has a protectable mark, and (2) that the Defendants' use of the mark in commerce is likely to confuse customers.

Plaintiff's mark is presumed to be valid and protectable because it is registered with the USPTO. 15 U.S.C. §§ 1057(b), 115(a); Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 930 (4th Cir. 1995).

With respect to the "likelihood of confusion," this Court considers nine factors:

(1) The strength or distinctiveness of the mark;
(2) The similarity of the two marks;
(3) The similarity of the goods/services the marks identify;
(4) The similarity of the facilities the two parties use in their businesses;
(5) The similarity of the advertising used by the two parties;
(6) The Defendants' intent;
(7) Actual confusion;
(8) The quality of the Defendants' product; and,
(9) The sophistication of the consuming public.

Rosetta Stone, Ltd. v. Google, Inc., 676 F.3d 144, 153 (4th Cir. 2012).

No one factor is dispositive and all of the factors are not of equal importance. Id. (citing Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984)).

(1) The Strength of Plaintiff's Mark.

The USPTO did not require Plaintiff to provide proof of secondary meaning in order to register the Plaintiff's Mark. (Doc. No. 1, Pl.'s Compl. 16). Registration without proof of secondary meaning gives rise to a presumption that the USPTO determined the mark is "suggestive," Pizzeria Uno, 747 F.2d at 1529, and Defendants have failed to rebut that presumption. A suggestive mark is afforded protection against the use of a "same or a confusingly similar mark *on the same product, or related products, and even on those which may be considered by some to be unrelated but which the public is likely to assume emanate from the trade mark owner.*" Pizzeria Uno, 747 F.2d at 1527 (italics in original).

Defendants have asserted in their brief in opposition to the preliminary injunction and at the evidentiary hearing that consumers are exposed to numerous third party uses of the "RECHARGE" mark for similar or related goods and are not confused by the common use of the word "RECHARGE." However, an examination of the other uses of the mark "RECHARGE" indicates that most of those other marks examined have other words added to the word "recharge," and/or "recharge" is rarely the dominant word on display. "Recharge" standing alone is rarely found except in the case of Plaintiff's products. It appears to the Court that Plaintiff has a strong mark and that this factor weighs in favor of Plaintiff.

(2) <u>The Similarity of the Two Marks.</u>

The Court finds that the word "recharge" is the dominant word in both of the parties' marks. "While a composite term, including disclaimed words or figures, is to be considered in its entirety in determining validity of a trade mark, it is a settled principle of trade mark law that '[t]he dominant part of a mark may be given extra weight on the issue of likelihood of confusion.'" <u>Id.</u> at 1530. "This is particularly so when the disclaimed word is set forth in considerably smaller letters than the dominant word." <u>Id.</u> Here, as it appeared on the packaging submitted as Plaintiff's Exhibit 2 at the preliminary injunction hearing, Defendants' use the word "Recharge" as the dominant word on their packaging, while the other words, "Dynamic" and "Nutrition," are in considerably smaller letters and a lighter font. Accordingly, the Court finds that these two marks in this case are similar. This factor weighs in favor of Plaintiff.

(3) <u>The Similarity of the Goods.</u>

The goods need not be identical or in direct competition with each other so long as they are designed to serve the same purpose. <u>Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.</u>, 43 F.3d 922, 937 (4th Cir. 1995) (citing <u>Pizzeria Uno</u>, 747 F.2d at 1535). Both parties refer

to their products as snack products. (Doc. 1, Pl.'s Compl.13, 14, 15; Doc. 20, D.'s Memo. In Opp. To Mot. For Prel. Inj., Attachment #1, Declaration of Nancy B. Huber, ¶ 2). Although the parties seem to be targeting different consumers, the Court finds that the goods sold by both parties serve the same purpose, which is to provide the consumer with a healthy food product, whether it is being marketed to those concerned with weight or diabetes, those who are elderly, college students concerned about their health, hospital employees, or those attending or frequenting a hospital cafeteria. Both parties are trying to sell their goods as health food products. This factor weighs in favor of Plaintiff.

       (4) <u>The Similarity of the Facilities and Similarity of Advertising.</u>

Both parties compete directly on the internet with respect to their nutrition bars. Furthermore, the evidence shows that if a consumer types in "recharge bar" into a Google or Bing search engine, the consumer will get information about the products of Plaintiff and Defendants. (Testimony of John Bauer). This factor weighs in favor of Plaintiff.

       (5) <u>The Defendant's Intent.</u>

There is no evidence that Defendants either acted in good faith or had any bad intent in choosing the mark "RECHARGE DYNAMIC NUTRITION." Plaintiff sent Defendants a cease and desist letter once Plaintiff became aware of Defendants' intent to use "RECHARGE DYNAMIC NUTRITION" for bars. On the other hand, the USPTO cleared Defendants' mark "RECHARGE DYNAMIC NUTRITION" for publication notwithstanding Plaintiff's prior registration for "RECHARGE." For purposes of this evidentiary hearing, this factor is neutral and does not impact the Court's analysis or conclusion.

(6) <u>Actual Confusion.</u>

There is no evidence of actual confusion among consumers at this stage. However, this Court sits as a trier of fact with respect to this motion for a preliminary injunction and has reviewed carefully Plaintiff's Exhibits 2 and 3 which were introduced into evidence at the preliminary injunction hearing. (Doc. Nos. 28 and 29). Plaintiff's Exhibit 2 is the Recharge Dynamic Nutrition bar which has the word "Recharge" in bold font, underneath which is the phrase "Dynamic Nutrition" in a font size that is half the size of the word "Recharge" font size and not as bold. The green color on Exhibit 2 (Defendants' bar) is similar to the green color on Exhibit 3 (Plaintiff's bar). Viewing these two products at the evidentiary hearing, Court expressed actual confusion itself between these goods, and finds that a consumer could believe they originated form the same source. As such, this factor weighs in favor of the Plaintiff.

(7) <u>The Quality of Defendants' Product.</u>

The Court finds that both products appear to be quality products. Plaintiff acknowledges that it has no health or safety concerns regarding Defendants' product. (Testimony of John Bauer). This factor is neutral.

(8) <u>The Sophistication of the Consuming Public.</u>

The consumers of Plaintiff's and Defendants' products are average consumers and not sophisticated consumers. This factor is neutral.

Overall, the <u>Rosetta Stone</u> factors are either neutral or support Plaintiff. Weighing all of the factors, and considering the evidence introduced at the hearing, the Court concludes that Plaintiff has demonstrated a likelihood of confusion among consumers between the marks "Recharge" and "Recharge Dynamic Nutrition." Based on this conclusion, paired with the

presumptive validity of Plaintiff's Mark and Defendants' use of its mark in commerce, the Court finds that Plaintiff is likely to succeed on the merits of its infringement claim.

**B. Likelihood of Plaintiff Suffering Irreparable Harm**

The Fourth Circuit has stated that "a presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion" in a trademark infringement action. Scotts Co. v. United Indus. Corp., 315 F.3d 264, 273 (4th Cir. 2002). This Court adheres to the presumption. In this case, there are two product lines which are extraordinarily similar. The fact that they are both in their infancy makes irreparable harm more likely because there is a likelihood that consumers are going to be confused if they encounter the products in the same location, in this case, the location being the internet. Furthermore, there could be other instances of confusion. For example, there is evidence that Plaintiff markets through major food suppliers, including Aramark, Compass, and Sodexo. (Testimony of John Bauer). Those companies are traditional food suppliers for hospital cafeterias and university cafeterias, among other places. So the consumer market targeted by Defendants could very easily encounter Plaintiff's products in a hospital cafeteria, for example.

**C. The Balance of Equities**

The balance of equities tips in favor of Plaintiff. Both parties have invested a significant amount of money into their products, amounting to hundreds of thousands of dollars for both sides. Plaintiff has probably invested less than the Defendants have, but that is not dispositive. If the amount of money spent in marketing or developing a product determined who won a trademark infringement action, then the wealthier company would always win a trademark dispute. The fact is that both sides have invested in developing a product and one party, the

Plaintiff, holds a federal registration for its product name. The Defendants do not. This tips the balance in favor of Plaintiff.

### D. Whether an Injunction is in the Public Interest

There is a "wide public interest in fair competition and avoiding confusion in the marketplace." Djarum v. Dhanraj Imports, Inc., 876 F. Supp.2d 664, 669 (W.D.N.C. 2012). This Court has found that there is a likelihood of confusion and that, as between Plaintiff and Defendants, Plaintiff was the first to use the name "Recharge" in the market. It is in the public interest to protect the registration properly obtained by Plaintiff. For these reasons, it is in the public interest to grant an injunction in favor of Plaintiff.

### III. CONCLUSION

Based on the above analysis, the Court finds that a preliminary injunction is appropriate in this case. However, the Court is not going to enjoin the sale of Defendants' product, but instead is going to fashion a narrowly tailored injunction such that Defendants' will suffer minimal harm as set forth below. The bond which the Court will require Plaintiff to post will cover any costs Defendants may incur in complying with the narrow injunction, should Defendants ultimately prevail. There was testimony from Defendants that the cost of changing the website would be approximately $2,000.00 to $3,000.00. (Testimony of Pat Muldoon). The Court finds such harm to be minimal in this case. The Court notes that Defendants' representative has testified that an employee will be terminated if an injunction is granted. The Court wants to make it abundantly clear that any such termination is within the sole discretion of Defendants. If Defendants choose to dismiss or punish a single employee because a preliminary injunction has been entered against Defendants for likelihood of consumer confusion, that is

Defendants' choice. It is not the intent of this Court's ruling for anyone to lose their position of employment.

**ORDER**

For the foregoing reasons, IT IS ORDERED that Plaintiff's Motion for a Preliminary Injunction is GRANTED as follows:

1. The Defendants are enjoined during the pendency of this action from using the name, logo, or mark "RECHARGE DYNAMIC NUTRITION" in any manner whatsoever except in accordance with the terms of this Order.

2. On or before 2:00 pm on June 4, 2013, Defendants are to either disable their internet site located at www.rechargefoods.com and Facebook page or change the presentation of the use of the phrase "Recharge Dynamic Nutrition" such that all three words are used in the same font, the same size lettering, the same bold face or lack of bold face, and the same use of italics or lack of italics so that the word "Recharge" is not highlighted or emphasized in any manner.

3. Similarly, in any other marketing undertaken by Defendants to promote the "Recharge Dynamic Nutrition" bars, the use of the "Recharge Dynamic Nutrition" name shall be made in the same manner as set forth in ordering paragraph 2 above.

4. Defendants, except as set forth below, are to produce new packaging for their bars whereby the phrase "Recharge Dynamic Nutrition" is modified such that all three words are used

in the same font, the same size lettering, the same bold face or lack of bold face, and the same use of italics or lack of italics so that the word "Recharge" is not highlighted or emphasized in any manner.

5. With respect to the $15,000 in inventory held by Defendants, Defendants may continue to sell that inventory without changing the packaging until and including June 26, 2013. At the end of that period, Defendants may come back to the Court regarding the disposition of any remaining inventory.

6. The Court will expedite the trial of this matter and set it on for a trial calendar in January, 2014 with summary judgment hearings in December, 2013. The parties are instructed to hold their Initial Attorneys' Conference as soon as possible and the Court will expedite the issuance of a Case Management Order.

7. The Plaintiff shall post security in the amount of $3,000.00 with the Clerk of Court for the United States District Court for the Western District of North Carolina. However, this injunction is effective as of May 29, 2013.

IT IS SO ORDERED.

Signed: June 10, 2013

Frank D. Whitney
Chief United States District Judge